# STATE OF MICHIGAN

# COURT OF APPEALS

THE MEISNER LAW GROUP PC,

Plaintiff-Appellant,

v

WESTON DOWNS CONDOMINIUM
ASSOCIATION,

Defendant-Appellee.

FOR PUBLICATION
October 24, 2017
9:00 a.m.

No. 332815
Oakland Circuit Court
LC No. 2015-149199-CB

Before: BECKERING, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Plaintiff brought this action for attorney fees in circuit court asserting that "[t]he amount in controversy exceeds $25,000." Plaintiff alleged three theories for relief: (1) quantum meruit or unjust enrichment under an unexecuted, proposed contingent fee agreement, (2) breach of an existing written retainer contract, and (3) that defendant misrepresented it would fairly compensate plaintiff for the work it would perform. The circuit court entered an order on February 24, 2016, granting defendant's motion for summary disposition under MCR 2.116(C)(4), finding that neither plaintiff's complaint nor any evidence that plaintiff submitted created a question of fact that plaintiff's claims might exceed $25,000. The circuit court also determined that plaintiff's claims were frivolous, ruling it would award defendant its attorney fees in an amount to be determined at a later hearing.[1] The circuit court entered an order denying plaintiff's motion for reconsideration. Plaintiff now appeals by right. We affirm.

## I. SUMMARY OF UNDERLYING FACTS

On May 24, 2013, plaintiff and defendant entered a general retention agreement (GRA) whereby defendant retained plaintiff as legal counsel to provide legal services at an hourly rate range for attorneys and lesser hourly rate range for the law firm's other employees. The GRA provided that plaintiff would send defendant statements containing "an itemized description of

---

[1] Defendant filed statements regarding attorney fees from two law firms in the amount of $16,615.50 and $5,945.00, to which plaintiff filed objections. The circuit court has not yet conducted a hearing to determine the amount of the attorney fee sanction.

services rendered" and defendant agreed to pay the statements within 15 days of receiving them. The GRA provided that defendant would be given 15 days of notice regarding any change in the hourly rates stated in the agreement and also provided that "[e]xcept for the change in hourly rates and flat fees, the terms and conditions of this retention agreement shall remain in effect, unless superseded by another fee agreement." The GRA contemplated that a separate agreement regarding fees might be required for work on a "major claim," providing:

> The rates quoted in this letter are with respect to general work performed on behalf of the Association. Should a major claim in behalf of or against the Association arise, a separate fee agreement would be established.

On May 13, 2015, defendant sought plaintiff's counsel regarding its concerns that the developer of the condominium, Mondrian Properties Weston Downs, LLC, had sold or transferred the last three remaining condominium units to its three principal members, who intended to use the units as rental properties. Defendant sought to amend the condominium by-laws and other documents to limit or prevent rentals and to review potential claims defendant may have against the developer regarding ownership of the units and liability for association fees. Plaintiff provided advice regarding potential legal claims against the developer and drafted necessary documents concerning amending the condominium's by-laws. Defendant paid plaintiff's invoices for these services under the GRA in the amount of $5,667.

Believing that the matters regarding the developer concerned a "major claim," plaintiff, through Robert Meisner, wrote via email to defendant's president on May 15, 2015, "enclosing a proposed fee agreement for consideration by the Board of Directors exclusively in regard to the Developer suit." This transmittal letter asked defendant's board to review the proposal "at your earliest convenience and presuming it is satisfactory, please have it signed and return it to me together with the initial retainer so that we can begin obtaining experts and otherwise preparing the claim." A second letter of the same date containing the proposed retainer agreement began by stating that "[t]his letter will serve to set forth this firm's fee arrangement and proposal in connection with our representation of Weston Downs Condominium Association regarding the prosecution of a claim and/or commencement of a lawsuit against those persons or entities responsible[.]" The proposed retainer agreement specified hourly rates slightly less than the GRA and in addition to the hourly rates, provided that "the Association shall pay the following contingency fee with respect to the litigation: fifteen (15%) percent of the value of all . . . benefits of any kind realized, paid to, and/or received by the Association . . . whether by way of settlement, agreement, case evaluation award, arbitration award, judgment, alternative dispute resolution, or otherwise . . . ."

The proposed retainer agreement also stated that "[i]f the contents of this agreement are satisfactory to the Board of Directors, please have two (2) representatives authorized by the Board of Directors date and sign the Agreement on behalf of the Association in the spaces provided below as well as the representative claimant . . . ." The next paragraph of the proposed retainer agreement stated: "The effective date of this Agreement shall be upon receipt of this signed agreement by the Board of Directors of the Association, and receipt of a retainer in the amount of $5,000." It is undisputed that defendant's board never authorized the proposed agreement, no authorized board members ever signed the proposed agreement, and defendant never paid plaintiff the required $5,000 retainer.

In an email exchange between defendant's board member, Rick Bonus, and plaintiff attorney Dan Feinberg, on June 1, 2015, defendant posed nine additional legal questions concerning potential claims the Association may have against the developer. Feinberg responded with answers to the questions posed in an email of June 4, 2015. It is undisputed that although defendant's representatives repeatedly invited plaintiff to invoice defendant for these services so that they could be paid, plaintiff never did so. It is also undisputed that the work to prepare the June 4, 2015 email was the last legal services plaintiff performed for defendant.

Through June and July 2015, representatives of plaintiff queried defendant's representatives concerning the status of defendant's intent regarding potential claims against the developer. Defendant's representatives responded that the Board was still considering its options. Plaintiff responded in a letter of June 11, 2015 by its principal, Robert Meisner, stating that defendant had taken plaintiff's valuable advice and proceeded on its own. Meisner noted that although defendant had not signed the proposed retainer agreement, plaintiff expected that it would be compensated for the "fair value" of its services. Meisner wrote in an email on August 7, 2015 to one of defendant's board members requesting clarification of defendant's position. Meisner stated that if he received no response within 7 days, he would assume that defendant no longer desired plaintiff's services, and that plaintiff would "notify the developer that we retain an attorney's lien on any [recovery and] . . . we are entitled to the fair value of our services."

Defendant's Board responded to the August 7, 2015 email of Meisner in a letter of August 11, 2015, signed by all three Board members, which stated, in pertinent part, "please be advised that the Board of Directors is not contemplating any legal action at this time against the developer and therefore no longer wishes your firm to provide any future services. Furthermore, as you note in your email, the Association has no[t] signed [the] engagement letter with your firm with respect to any such litigation."

Plaintiff responded in an August 18, 2015, letter by Meisner to the Board's president, Rose Ann Schmitt. Meisner expressed his shock at defendant's "lack of good faith" and accused defendant's Board of "using our work-product without our knowledge or consent to obtain substantial benefits for the Association." Meisner also "advised that unless you provide this firm with full disclosure as to what has transpired between the Association and the Developer since our email to the Board of June 4, 2015, we will have no choice but to not only file an attorney's lien, but to institute litigation to seek the information through the discovery process[.]" Meisner also threatened that plaintiff would "consider proceeding against [Schmitt] personally for what I consider to be a fraud on this firm."

On September 18, 2015, plaintiff filed its three-count complaint against defendant in the Oakland Circuit Court. As noted, plaintiff's complaint alleged (1) quantum meruit or unjust enrichment; (2) breach of the GRA; and (3) misrepresentation that defendant would compensate plaintiff for the "fair value" of its work. The essence of plaintiff's unjust enrichment is stated in paragraph 16, "The Board accepted the benefits of the [plaintiff's] advice, and, on information and belief, utilized this special advice and information to leverage a settlement with the developer." Plaintiff never produced any evidence of a "settlement" between defendant and the developer.

Defendant responded to plaintiff's original complaint on October 19, 2015 with a motion for summary disposition under MCR 2.116(C)(4), (8), & (10), and for sanctions pursuant to MCR 2.114(E) and (F), MCR 2.625(A)(2), and MCL 600.2591. Thereafter, plaintiff filed, on November 2, 2015, a first amended complaint with minor editorial changes from the original complaint. Defendant filed a response to the amended complaint, noting that nothing in the amended complaint "remedied the misdeeds that warrant the imposition of sanctions against [plaintiff] pursuant to MCR 2.114(E) and (F), MCR 2.625(A)(2), and MCL 600.2591," so, defendant stood on its previously filed motion for summary disposition. That motion, with respect MCR 2.116(C)(4), asserted that plaintiff "has not produced and cannot produce any evidence to support its vacant claim that the 'amount in controversy exceeds $25,000.' "

The hearing on defendant's motion for summary disposition occurred on February 24, 2016. At the hearing defendant was permitted to file an affidavit of Joseph Maniaci, a managing principal of the developer. Maniaci averred that no litigation ever existed between defendant and the developer and that defendant had asserted no claims against the developer since May 24, 2013.[2] Otherwise, both parties stood on their written submissions. The circuit court dismissed plaintiff's complaint without prejudice on the basis that plaintiff's claim could not exceed $25,000. The court ruled that neither plaintiff's complaint nor any evidence that plaintiff submitted created a question of fact that plaintiff's claims might exceed $25,000. The circuit court also determined that plaintiff's claims were frivolous and ruled that it would determine an award of attorney fees at a later hearing. No further hearings were held in the circuit court. Plaintiff appeals by right.

## II. AMOUNT IN CONTROVERSY

### A. PRESERVATION

Plaintiff preserved this issue for appellate review by presenting it to the circuit court, which addressed and decided it.[3] *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008).

---

[2] May 24, 2013 is the date that defendant signed the GRA with plaintiff.

[3] Although the circuit court did not address defendant's arguments for summary disposition under MCR 2.116(C)(8) and (C)(10), defendant presents them as alternative grounds to affirm the circuit court. An appellee, like defendant, without filing a cross-appeal, may "urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court or tribunal." *Boardman v Dep't of State Police*, 243 Mich App 351, 358; 622 NW2d 97 (2000), citing *Middlebrooks v Wayne Co*, 446 Mich 151, 166, n 41; 521 NW2d 774 (1994). But while alternative grounds to affirm may be considered, affirming the circuit court on the alternative grounds asserted would grant defendant more relief than defendant obtained in the circuit court. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 683; 854 NW2d 489 (2014) ("An appellee may urge an alternative ground for affirmance without filing a cross-appeal, but an appellee may not obtain a decision more favorable than that rendered below without filing a cross-appeal."). So, we decline to address defendant's alternative arguments.

B. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Cairns v East Lansing*, 275 Mich App 102, 107; 738 NW2d 246 (2007). "Jurisdictional questions under MCR 2.116(C)(4) are questions of law that are also reviewed de novo." *Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 204; 631 NW2d 733 (2001). Similarly, issues of statutory interpretation are questions of law that are reviewed de novo on appeal. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 393; 651 NW2d 756 (2002). A trial court is duty-bound to recognize the limits of its subject-matter jurisdiction and must dismiss an action when subject-matter jurisdiction is not present. *Id*. at 399; *Cairns*, 275 Mich App at 107.

MCR 2.116(C)(4) permits a trial court to dismiss a complaint when "[t]he court lacks jurisdiction of the subject matter." A motion under subrule (C)(4) may be supported or opposed by affidavits, depositions, or other documentary evidence. MCR 2.116(G)(2). When affidavits, depositions, or other documentary evidence are submitted on a motion under MCR 2.116(C)(4), they "must be considered by the court[.]" MCR 2.116(G)(5). So, when reviewing a motion for summary disposition brought under MCR 2.116(C)(4) that asserts the court lacks subject-matter jurisdiction, the court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact. *Summer v Southfield Bd of Ed*, 310 Mich App 660, 668; 874 NW2d 150 (2015); *Manning v Amerman*, 229 Mich App 608, 610; 582 NW2d 539 (1998).

C. ANALYSIS

In this civil action where the undisputed facts show that the amount in controversy could not exceed $25,000, the circuit court properly granted summary disposition under MCR 2.116(C)(4) because it lacked subject-matter jurisdiction which lay exclusively with the district court. MCL 600.605; MCL 600.8301(1); *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 560; 840 NW2d 375 (2013) ("District courts in Michigan have exclusive jurisdiction over civil matters where the amount in controversy does not exceed $25,000."); *Bowie v Arder*, 441 Mich 23, 50; 490 NW2d 568 (1992) ("circuit courts do not have jurisdiction in matters in which jurisdiction is given exclusively by constitutional provision or by statute to another court"). Consequently, we affirm the circuit court.

Michigan's Constitution provides in pertinent part, that "judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, . . . and courts of limited jurisdiction that the legislature may establish[.]" Const 1963, art 6, § 1. Under this authority, the Legislature enacted MCL 600.605 [4] and MCL 600.8301(1) [5] that plainly combine,

---

[4] "Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state."

[5] "The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00."

-5-

when no other jurisdictional statute applies, to deprive the circuit court of jurisdiction over civil actions "when the amount in controversy does not exceed $25,000.00." MCL 600.8301(1). Our Supreme Court explained: "Although circuit courts are courts of general jurisdiction, with original jurisdiction to hear and determine all civil claims and remedies, circuit courts do not have jurisdiction in matters in which jurisdiction is given exclusively by constitutional provision or by statute to another court." *Bowie*, 441 Mich at 50.

But Michigan's judiciary have long held that the circuit court is not deprived of subject-matter jurisdiction where a plaintiff claims damages in excess of the jurisdictional amount but the judge or jury returns a verdict of an amount less than the jurisdictional limit. See, e.g., *Fox v Martin*, 287 Mich 147, 151; 283 NW 9 (1938) ("Jurisdiction does not depend upon the facts, but upon the allegations."); *Zimmerman v Miller*, 206 Mich 599, 604-605; 173 NW 364 (1919) (The "jurisdiction of the court is determined by the amount demanded in the plaintiff's pleadings, not by the sum actually recoverable or that found by the judge or jury on the trial[.]"); *Inkster v Carver*, 16 Mich 484, 487-488 (1868) ("[T]he only practical rule . . . [is] that the damages claimed in the declaration or process, and not the amount found by the court or jury upon trial, must be the test of jurisdiction.]"); *Strong v Daniels*, 3 Mich 466, 471 (1855) (The Court held, "upon general principles . . . that jurisdiction must be determined from the record, and, where it depends on amount, by the sum claimed in the declaration or writ.").

In *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211; 884 NW2d 238 (2016), our Supreme Court considered the reverse scenario of the present case: a plaintiff filed a complaint in district court seeking damages "not in excess of $25,000" but discovery and proofs at trial revealed actual damages were far in excess of $25,000. *Id*. at 214. The district court permitted the case to go to the jury, which returned a verdict for the plaintiff of $85,000. The district court entered a remitted judgment of $25,000, plus interest. [6] The circuit court reversed, finding that the district court lacked jurisdiction, and this Court affirmed. *Id*. at 214-215; *Moody v Home Owners Ins Co*, 304 Mich App 415; 849 NW2d 31 (2014). Our Supreme Court reversed, holding that the district court had jurisdiction because "in its subject-matter jurisdiction inquiry, a district court determines the amount in controversy using the prayer for relief set forth in the plaintiff's pleadings, calculated exclusive of fees, costs, and interest." *Hodge*, 499 Mich at 223-224. The Court reasoned that the court below made "no findings . . . of bad faith in the pleadings," so "[e]ven though [the plaintiff's] proofs exceeded [the district court's jurisdictional limit], the prayer for relief controls when determining the amount in controversy, and the limit of awardable damages." *Id*. at 224. Therefore, "the district court had subject-matter jurisdiction over the plaintiff's claim."

---

[6] The Court in, *Strong*, 3 Mich at 473, opined: "It is well settled in actions commenced before a justice of the peace, that the test of jurisdiction is the sum demanded in the writ or declaration, and the justice will not be ousted of his jurisdiction by the jury returning a verdict, or by proof of damages beyond his jurisdiction. In such case the excess may be remitted, and judgment rendered for the balance."

Does the *Hodge* rule—courts determine the "amount in controversy" solely by the prayer for relief in the plaintiff's pleadings—apply to this case, where plaintiff pleaded that the "amount in controversy exceeds $25,000" but the circuit court determined, based on the documentary evidence that the parties submitted on defendant's motion for summary disposition under MCR 2.116(C)(4), that the undisputed facts showed the amount in controversy could not exceed $25,000? Stated otherwise, the first question is whether "the amount in controversy" of a civil action filed in the circuit court is determined, for purposes of the subject-matter jurisdiction, solely on the basis of the amount claimed in the complaint? According to the authority set forth under the "Standard of Review," the answer is no. The Michigan Court Rules of 1985 require a circuit court, when its jurisdiction is challenged with a motion under MCR 2.116(C)(4), to consider the "affidavits, depositions, admissions, or other documentary evidence" that the parties may submit "to support or oppose the grounds asserted in the motion." MCR 2.116(G)(2); MCR 2.116(G)(5); see *Moody*, 304 Mich App at 437. So, when reviewing a motion under MCR 2.116(C)(4) that asserts the court lacks subject-matter jurisdiction, the circuit court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there is no genuine issue of material fact concerning provable damages See *Summer*, 310 Mich App at 668.

Additionally, as noted above, the *Hodge* rule does not apply where a party's pleadings are made in bad faith. *Hodge*, 499 Mich at 221-224. The majority in *Hodge* did not expand on what constitutes "bad faith" but it did note that "a court will not retain subject-matter jurisdiction over a case 'when . . . fraud upon the court is apparent' from allegations pleaded in bad faith." *Id*. at 221 n 31, citing *Fix v Sissung*, 83 Mich 561, 563; 47 NW 340 (1890). "In *Fix*, this Court dismissed the plaintiff's suit as being brought in bad faith because the amount claimed was 'unjustifiable' and could not be proved." *Id.*, citing *Fix*, 83 Mich at 563. Thus, "bad faith" is not a plaintiff's subjective ill will. Bad faith exists when the plaintiff's claim to damages in the pleadings are "unjustifiable" because they "could not be proved." *Hodge*, 499 Mich at 221 n 31. The "bad faith" found in *Fix* and endorsed in *Hodge* mirrors the requirements of MCR 2.116(C)(4), (G)(2), & (G)(5). Although a plaintiff may claim damages in excess of $25,000, where the documentary evidence submitted to the circuit court shows by undisputed facts that the plaintiff's claim to damages exceeding the jurisdictional amount cannot be proved, summary disposition under MCR 2.116(C)(4) is proper. *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138-139; 796 NW2d 94 (2010); *Weishuhn v Catholic Diocese of Lansing*, 279 Mich App 150, 176; 756 NW2d 483 (2008); MCR 2.116(I)(1) ("If the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay.").

*Hodge* is further distinguished from the present case because it addressed the limited jurisdiction of the district court, where damages may not be obtained in excess of its limited jurisdiction of $25,000. *Hodge*, 499 Mich at 216, n 13. "The district court, therefore, may not award damages in excess of that amount." *Id*. at 216-217. In other words, a plaintiff pleading a case of damages for $25,000 or less who proves and obtains a verdict for more than $25,000, would still be limited to judgment of not more than the district court's jurisdictional limit of $25,000. *Id*. at 224. The *Hodge* Court suggested this result "should deter fully-informed plaintiffs from too-readily seeking to litigate a more valuable claim in district court." *Id*. at 223. But, the Court also declined to address "whether a fully-informed plaintiff acts in bad faith by

filing a claim in district court, thereby limiting his own recovery to $25,000." *Id.*, n 31. Thus, *Hodge* permits a fully-informed plaintiff as a matter of tactical advantage to limit recovery of a claim worth more than $25,000 by filing it in the district court. Although the *Hodge* Court premised its decision by applying long-standing common law practice to the Legislative phrase "amount in controversy," *id.* at 221, it plainly only decided when the district court has jurisdiction under MCL 600.8301(1). The circuit court's jurisdiction on a motion under MCR 2.116(C)(4) must be determined in accordance the Court Rules and long-standing case law. Where there is a complaint that asserts damages in excess of $25,000 but then "affidavits, depositions, admissions, or other documentary evidence," MCR 2.116(G)(2), show without dispute that the amount "could not be proved," *Hodge*, 499 Mich at 221 n 31, the complaint would essentially be one pleaded in bad faith.

In this case, the circuit court correctly ruled based on the documentary evidence submitted to it that plaintiff could not prove or more accurately could not create a question of fact that its claim for compensation for legal services under any of the theories advanced could exceed the $25,000 jurisdictional limit of the circuit court. The undisputed evidence showed that plaintiff had performed legal research and answered certain questions posed by defendant's representative. The questions were posed on June 1, 2015 in an email and answered by one of plaintiff's attorneys in an email on June 4, 2015. It is undisputed that when these legal services were rendered, there was a written general retainer agreement (GRA) between plaintiff and defendant providing for a top hourly attorney rate of $325. Although defendant requested that plaintiff invoice it for these services so that defendant could pay plaintiff for the work performed, plaintiff never did. Looking at these facts in a light most favorable to plaintiff, we note that if these legal services required 32 hours of attorney time at $325 per hour, the total amount due would be $10,400. If this amount were increased by 50% for any support staff services and for winding up plaintiff's legal representation of defendant, the total expense would still be under $16,000. In sum, the undisputed evidence showed that plaintiff's claim for unpaid legal services under any theory "could not be proved" to exceed $25,000. *Hodge*, 499 Mich at 221 n 31.

Plaintiff argues that its claim for the "fair value" for its services would be in excess of $25,000 by relying on a proposed "major claims" retainer agreement that contained both hourly rates less than the GRA and a contingent fee based on any judgment or settlement that defendant might obtain. It is undisputed the proposed hybrid retainer agreement with the contingent fee clause never became effective because no authorized representatives of defendant's governing board ever signed it, nor did defendant pay a required retainer fee. Nevertheless, plaintiff argues that the unexecuted contingent fee agreement would be an appropriate measure of the value of its services under both plaintiff's quantum meruit or unjust enrichment theory, and its claim that defendant misrepresented that it would fairly compensate plaintiff. These theories contemplate that plaintiff be compensated for the benefit plaintiff's legal work conferred on defendant. "The essential elements of [an unjust enrichment] claim are (1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain." *B & M Die Co* v *Ford Motor Co*, 167 Mich App 176, 181; 421 NW2d 620 (1988). "Quantum meruit is an equitable doctrine that prevents a client's unjust enrichment while compensating an attorney for

only those benefits actually generated by the attorney's work." *Island Lake Arbors Condo Ass'n v Meisner & Assoc, PC*, 301 Mich App 384, 399; 837 NW2d 439 (2013).[7]

The undisputed facts do not support plaintiff's claim that defendant received a valuable settlement based on plaintiff's advice, i.e., that defendant received a benefit that it would be unjust to retain. The contingent fee agreement was proposed to pursue claims against the condominium developer and would be invoked if litigation were initiated or a claim made and a judgment, award or settlement entered. But, the undisputed facts show that none of these events occurred. Defendant's August 11, 2015 letter to plaintiff informed plaintiff that defendant did not intend to pursue legal action against the developer. An affidavit of the developer's manager averred that no litigation ever existed between defendant and the developer and that defendant had asserted no claims against the developer since the GRA was executed. Thus, there was no evidence to support a claim that defendant unjustly or fraudulently received a benefit on the basis of legal services plaintiff provided. So, the undisputed evidence showed that plaintiff's claim for unpaid legal services under a theory of quantum meruit or unjust enrichment or fraudulent misrepresentation "could not be proved" to exceed 25,000. *Hodge*, 499 Mich at 221 n 31.

Instead of producing evidence of a settlement between defendant and the developer, plaintiff only presents speculation that one occurred based on plaintiff's characterization that defendant was being "astonishingly secretive and unresponsive" to plaintiff's several requests for information during June and July 2015. From this speculation, plaintiff inferred that defendant had entered a valuable settlement with the developer that was procured on the basis of the legal advice plaintiff provided. But "[a] party opposing a motion for summary disposition must present more than conjecture and speculation to meet its burden of providing evidentiary proof establishing a genuine issue of material fact." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 192-193; 540 NW2d 297 (1995). Because plaintiff offers only speculation that defendant used its legal advice to "leverage a settlement" with the developer, such conjecture is insufficient to create a question of disputed fact to survive a motion for summary disposition. *Yoost v Caspari*, 295 Mich App 209, 227-228; 813 NW2d 783 (2012) (speculation is insufficient to establish facts necessary for limited personal jurisdiction); *Central Transport, Inc v Fruehauf Corp*, 139 Mich App 536, 546; 362 NW2d 823 (1984) ("Calculation of lost profits cannot be based on conjecture and speculation). A mere possibility that a claim might be supported by evidence at trial is insufficient. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

---

[7] In this case, a similar hybrid retainer agreement was entered, and plaintiff represented a client in litigation for 18 months before being discharged. The litigation was eventually settled. *Island Lake Arbors Condo Ass'n*, 301 Mich App at 386. The plaintiff brought a declaratory action contesting Meisner's charging lien. *Id*. This Court held, on the basis of the unambiguous contract language, that "Meisner is entitled to a contingent share of Island Lake's recovery . . . by applying quantum meruit principles and cannot exceed 12 percent of the total recovery . . . ." *Id*. at 387. *Island Lake* is inapposite here, where the undisputed documentary evidence shows that the contingent fee contract never became effective, no claim or litigation was initiated, and there is no evidence a settlement was ever entered between defendant and the developer.

Plaintiff also argues that he did not have a chance to prove his claim because summary disposition was granted before discovery occurred. In general, summary disposition is premature if granted before discovery on a disputed issue is complete. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). But a party must show that further discovery presents a fair likelihood of uncovering factual support for the party's position. *Liparoto Constr Co, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009). Indeed, a party claiming that summary disposition is premature must "identify[] a disputed issue and support[] that issue with independent evidence." *Froling Trust*, 283 Mich App at 292, citing *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). In this case, both of the participants of the alleged settlement assert that litigation was not initiated; a claim was not made, and no settlement exists. Plaintiff offers no independent evidence that further discovery would uncover evidence to contradict that submitted by defendant. *Id*. Consequently, plaintiff has not shown a fair likelihood that further discovery could enable plaintiff to establish a question of fact concerning a settlement to which it believes it is entitled to a portion of as "fair compensation" for its legal work. *Liparoto Constr Co*, 284 Mich App at 33-34. The circuit court did not prematurely grant summary disposition.

Plaintiff also argues that its claim is supported because this instance is the second time that defendant had sought and obtained significant legal advice regarding major claims against the developer and afterward become "uncommunicative." Although plaintiff alleged a similar incident occurred in 2013-2014, plaintiff presented no evidence to support the claim. The circuit court's review is limited to the evidence that is presented to the court at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009). Similarly, a party may not expand the record on appeal, *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005), and this Court's review is limited to the trial court record, *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002).

In summary, the undisputed evidence showed that plaintiff's claim for unpaid legal services under any theory "could not be proved" to exceed 25,000. *Hodge*, 499 Mich at 221 n 31. The circuit court properly granted summary disposition under MCR 2.116(C)(4) because it lacked subject-matter jurisdiction which lay exclusively with the district court. MCL 600.605; MCL 600.8301(1); *Bowie*, 441 Mich at 50; *Clohset*, 302 Mich App at 560.

## III. EQUITABLE IN NATURE

Plaintiff also argues that regardless of the amount in controversy, the circuit court had jurisdiction of its complaint because its claims were equitable in nature. Plaintiff argues that under MCL 600.8302 and MCL 600.8315, the district court did not have jurisdiction; therefore, jurisdiction lay in the circuit as the court of general jurisdiction that has jurisdiction in equitable matters except as limited by Michigan's Constitution or by statute. See MCL 600.601(1)(b); MCL 600.605; *Bowie*, 441 Mich at 37-38. We disagree.

## A. PRESERVATION & STANDARD OF REVIEW

Plaintiff did not preserve this issue for appellate review by presenting it to and obtaining a ruling from the circuit court. *Walters*, 481 Mich at 387-388.

Whether a court has subject-matter jurisdiction presents a question of law reviewed de novo. *Teddy 23, LLC v Mich Film Office*, 313 Mich App 557, 564; 884 NW2d 799 (2015). Questions of statutory interpretation are also reviewed de novo. *Id*.

## B. ANALYSIS

This issue is one of first impression. Must a claim of quantum meruit be brought in circuit court because it is "equitable in nature"? See MCL 600.8315. We conclude that because plaintiff sought only legal relief—money damages—the district court "has exclusive jurisdiction" of this civil action where "the amount in controversy does not exceed $25,000.00." MCL 600.8301(1); MCL 600.605.

Plaintiff argues that its quantum meruit claim is "equitable in nature" and therefore must be brought in the circuit court because the district court lacks general equitable jurisdiction. This Court has opined that "while a claim for contract damages is legal in nature, a claim of quantum meruit is equitable in nature." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 199; 729 NW2d 898 (2006). The Court also noted that where a contract for labor is breached, the aggrieved party may sue for damages on the contract or ignore the contract and assert unjust enrichment as the proper remedy. *Id*. For quantum meruit or unjust enrichment to apply, there must not be an express contract between the parties covering the same subject matter. *Id*. at 194. Equitable principles apply because "the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Id*. at 195. Although plaintiff's theory of recovery rests on equitable principals of unjust enrichment, plaintiff's complaint sought only legal relief of money damages. In other contexts, the relief sought by a plaintiff determines its procedural rights. See, e.g., *Anzaldua v Band*, 457 Mich 530, 538 n 6; 578 NW2d 306 (1998); *B & M Die Co* v *Ford Motor Co*, 167 Mich App 176, 184; 421 NW2d 620 (1988), holding that a party seeking only equitable relief has no right to a trial by a jury except when coupled with a claim for legal relief in the form of money damages.

Plaintiff first argues that under the terms of MCL 600.8302 the district court does not have equitable jurisdiction of its quantum meruit claim. Plaintiff contends that MCL 600.8302 limits the district court's equitable jurisdiction to cases brought under chapter 84 (small claims), chapter 57 (summary proceedings), chapter 31 (forfeiture of land contracts), chapter 33 (partition), or chapter 38 (public nuisances). Because none of these grants of equitable jurisdiction applies to plaintiffs' unjust enrichment claim, plaintiff reasons, its equitable unjust enrichment claim must come within the circuit court's general jurisdiction under MCL 600.605, which includes "all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court . . . ." This conclusion, plaintiff contends, is supported by MCL 600.8302 providing that district courts *only* have equitable jurisdiction to the limited extent permitted in that section.

Defendant correctly argues that plaintiff misreads MCL 600.8302. The statute provides in pertinent part: "In *addition* to the civil jurisdiction provided in sections 5704 and 8301, the district court has equitable jurisdiction and authority concurrent with that of the circuit court in the matters and to the extent provided by this section." *Id*. (emphasis added). By its plain terms § 8302 is a grant of *additional* jurisdiction to the district court that is concurrent with that of the circuit court. The statute specifically delineates this grant—"the extent provided by this

-11-

section"—but nowhere limits the grant of jurisdiction provided by other statutory provisions, including § 8301. If a claim specified in § 8302 is brought in the district court, this Court has held that the district has jurisdiction even when the amount in controversy exceeds the jurisdictional "amount in controversy" limitation of § 8301. See *Clohset*, 302 Mich App at 560-563, holding that the specific jurisdictional grant of MCL 600.8302(1) and (3) takes precedence over the more general jurisdictional grant found in MCL 600.8301(1); see also *Bruwer v Oaks (On Remand)*, 218 Mich App 392, 395-396; 554 NW2d 345 (1996). MCL 600.8302 simply does not provide, as plaintiff argues, that equitable matters not listed in the statute may not be brought in the district court and that therefore the circuit court must have jurisdiction. Rather, civil actions not within the ambit of § 8302 are controlled, where no other jurisdiction statute or constitutional provision applies, by the jurisdictional amount stated in MCL 600.8301(1).

Plaintiff's other argument, raised for the first time in its reply brief, is more problematic. Plaintiff cites MCL 600.8315 that provides in part: "The district court shall not have jurisdiction in actions for injunctions, divorce or actions which are historically equitable in nature, except as otherwise provided by law." Plaintiff argues that because it is "equitable in nature" plaintiff was prohibited by § 8315 from filing its quantum meruit claim in the district court; therefore, it was required to file it in the circuit court. Plaintiff cites *Paley v Coca-Cola Co*, 389 Mich 583; 209 NW2d 232 (1973) in support of its argument. But *Paley* was a plurality opinion of an evenly divided Court (3-3) that affirmed this Court's holding permitting a class action lawsuit to proceed in circuit court, although none of the individual plaintiffs satisfied the jurisdictional limitation of that court.[8] Justice Williams, writing for the plurality to affirm, reasoned that class actions are historically equitable in nature and that § 8315's exclusion of "actions which are historically equitable in nature" from the jurisdiction of the district court must mean the Legislature intended class actions to be brought in the circuit court. *Paley*, 389 Mich at 590-592. Justice Williams also quoted approvingly this Court's opinion that " 'irrespective of the amount in controversy, a cause sounding primarily in equity must be brought in the circuit court.' " *Id*. at 594, quoting *Paley v Coca-Cola Co*, 39 Mich App 379, 383; 197 NW2d 478 (1972).

Justice William's plurality opinion, however, is not binding precedent because it does not represent a majority opinion of the Court. See *Negri v Slotkin*, 397 Mich 105, 109; 244 NW2d 98 (1976) ("Plurality decisions in which no majority of the justices participating agree as to the reasoning are not an authoritative interpretation binding . . . under the doctrine of Stare decisis."). Moreover, plaintiff's complaint sounds primarily in contract and seeks legal relief in the form of a money judgment. Plaintiff asserts that it is entitled to money damages under equitable principles related to unjust enrichment but does not seek equitable relief. So, plaintiff's complaint does not sound primarily in equity or seek equitable relief; the complaint is primarily a legal claim, and the phrase "equitable in nature" should not take precedence over the phrase "otherwise provided by law" in MCL 600.8315. As to the latter, the district court has "exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000." MCL 600.8301(1). As discussed, plaintiff's complaint comes within this exclusive jurisdiction.

---

[8] This Court subsequently held that individual plaintiffs may not aggregate their claims to satisfy the jurisdictional limit of the circuit court. *Boyd v Nelson Credit Centers*, 132 Mich App 774, 780-781; 348 NW2d 25 (1984).

In sum, because plaintiff sought only legal relief—money damages—the district court "has exclusive jurisdiction" of plaintiff's civil action of its contract and quasi-contract theories because the undisputed evidence showed that "the amount in controversy does not exceed $25,000.00." MCL 600.8301(1); MCL 600.605. The circuit court properly granted defendant summary disposition under MCR 2.116(C)(4).

## IV. FRIVOLOUS CLAIM

### A. STANDARD OF REVIEW

"A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *1300 Lafayette East Coop, Inc v Savoy*, 284 Mich App 522, 533; 773 NW2d 57 (2009). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662; 641 NW2d 245 (2002).

### B. ANALYSIS

Plaintiff's first argument—that the circuit upon finding it lacked subject-matter jurisdiction could take no action other than dismiss the complaint—is contrary to Supreme Court precedent. See *Fix*, 83 Mich at 563 (affirming the circuit court's dismissal of a complaint for lack of subject-matter jurisdiction and holding that the circuit court "was right in dismissing the case, with costs"). Further, MCR 2.114, MCR 2.625(A)(2), and MCL 600.2591, not only authorize but require a court to sanction an attorney or party that files a frivolous action or defense. Additionally, the circuit court has inherent authority to impose sanctions on litigants appearing before it regardless of whether the court also rules it lacks jurisdiction over a complaint. *Maldonado v Ford Motor Co*, 476 Mich 372, 375-376, 719 NW2d 809 (2006); see also *Baynessan v Wayne State Univ*, 316 Mich App 643, 651, 655, 894 NW2d 102 (2016). "An exercise of the court's 'inherent power' may be disturbed only upon a finding that there has been a clear abuse of discretion." *Brenner v Kolk*, 226 Mich App 149, 160; 573 NW2d 65 (1997).

"Whether a claim is frivolous within the meaning of MCR 2.114(F) and MCL 600.2591 depends on the facts of the case." *Kitchen*, 465 Mich at 662. A civil action is "frivolous" when:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit. [MCL 600.2591(3)(a).]

The frivolous claim or defense provisions of the Court Rules and MCL 600.2591 impose an affirmative duty on each attorney to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed. *Attorney General v Harkins*, 257 Mich App 564, 576; 669 NW2d 296 (2003). The reasonableness of the attorney's inquiry is determined by an

objective standard, not the attorney's subjective good faith. *Id*. The purpose of imposing sanctions for asserting a frivolous action or defense is to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose. *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 405; 700 NW2d 432 (2005). A court must determine whether a claim or defense is frivolous based upon the circumstances at the time it was asserted. *Robert A Hansen Family Trust v FGH Inds, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008).

The circuit court in ruling that plaintiff's action was frivolous did not specify under which subparagraph of MCL 600.2591(3)(a) it was basing this finding. The circuit court ruled:

> [T]he matter is before the Court on a request for sanctions and whether for filing a frivolous complaint. In this case plaintiff filed a case based on an unsigned agreement. The Court reviewed the file. There was a letter from the Association saying they didn't wish to proceed. Then this case was brought, a very serious case requesting fees with no amount and no billing ever having been made. And, there's been no proof, in fact there's an affidavit to the contrary that there was never any litigation that began to which the plaintiff even under -- if they -- the agreement had been signed a fee would have been earned.

While the circuit court did not specify which subsection of MCL 600.2591(3)(a) it found applicable, it is clear from the court's comments that it made no specific mention that plaintiff acted with an improper purpose under § 2591(3)(a)(*i*). Rather, the circuit court explicitly and implicitly found that plaintiff "had no reasonable basis to believe that the facts underlying that party's legal position were in fact true." MCL 600.2591(3)(a)(*ii*). This finding, in turn, implicates § 2591(3)(a)(*iii*), which applies when "[t]he party's legal position was devoid of arguable legal merit." " 'A claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact[.]' " *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 589; 884 NW2d 587 (2015), quoting *Adamo Demolition Co v Dep't of Treasury*, 303 Mich App 356, 369; 844 NW2d 143 (2013). The circuit court did not clearly err in its findings because they have sufficient evidentiary support; this Court is not left with a definite and firm conviction that a mistake has been made. *Kitchen*, 465 Mich at 661-662.

The evidence supports that plaintiff based its claims on an unexecuted retainer agreement, which the undisputed facts showed would not have yielded a contingent fee even if effective, because defendant did not initiate litigation or a claim against the developer. Defendant advised plaintiff by letter before this lawsuit was filed that it did not intend on pursuing claims against the developer. While the developer's affidavit stating that plaintiff had not initiated a claim or litigation against it was made after the lawsuit was filed, the facts averred could have been confirmed by contacting the clerk of the pertinent court or making direct inquiry of the developer. So there was no basis in fact to support plaintiff's speculative belief that defendant had benefited unjustly from plaintiff's legal advice and reached a valuable settlement with the developer that was the foundation of plaintiff's claims of quantum meruit, unjust enrichment, and fraudulent misrepresentation. And plaintiff's last claim—based on an assertion that defendant sought legal advice for which it never intended to pay—is totally unsupported by the facts that defendant repeatedly requested a bill for services rendered in June 2015 so that it could pay for those services, but plaintiff refused to send defendant an invoice of the services it

performed. This evidence supports the conclusion that plaintiff did not sufficiently investigate and research the factual bases of its claims. *BJ's & Sons Constr*, 266 Mich App at 405. And even if plaintiff's principal had a subjective good faith belief in the viability of the claims, an objective assessment of facts known and reasonably knowable, *Harkins*, 257 Mich App at 576, shows that plaintiff "had no reasonable basis to believe that the facts underlying that party's legal position were in fact true." MCL 600.2591(3)(a)(*ii*). The circuit court did not clearly err in finding that plaintiff's claims were frivolous and awarding defendant its attorney fees, subject to a reasonableness hearing. *Kitchen*, 465 Mich at 661-662; *Ford Motor*, 313 Mich App 589-590.

We therefore affirm the circuit court's finding that plaintiff's claims were frivolous and remand the case for a hearing regarding a reasonable attorney fee award. See *Vittiglio v Vittiglio*, 297 Mich App 391, 408-410; 824 NW2d 591 (2012); *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 171-172; 712 NW2d 731 (2005).

## V. CONCLUSION

The undisputed evidence showed that plaintiff's claim for unpaid legal services under any theory "could not be proved" to exceed $25,000. So, the circuit court properly granted summary disposition under MCR 2.116(C)(4) because it lacked subject-matter jurisdiction which lay exclusively with the district court. MCL 600.605; MCL 600.8301(1).

Plaintiff's complaint does not sound primarily in equity or seek equitable relief; the complaint is primarily a legal claim and the phrase "equitable in nature" should not take precedence over the phrase "otherwise provided by law" in MCL 600.8315. Because plaintiff sought only legal relief—money damages—the district court "has exclusive jurisdiction" of plaintiff's civil action of its contract and quasi-contract theories because the undisputed evidence showed that "the amount in controversy does not exceed $25,000.00." MCL 600.8301(1); MCL 600.605. The circuit court properly granted defendant summary disposition. MCR 2.116(C)(4).

We affirm the circuit court's finding that plaintiff's claims were frivolous and remand the case for a hearing regarding a reasonable attorney fee award.

We affirm and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant, as the prevailing party, may tax its costs under MCR 7.219.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Michael J. Riordan