*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

BLANCHE HUDSON and PAT FOSTER,

        Plaintiffs-Appellants,

v

JOHN C. KLEUESSENDORF and JOHN T. BENSON,

        Defendants-Appellees.

UNPUBLISHED
July 25, 2019

No. 344482
Allegan Circuit Court
LC No. 13-052422-NZ

Before: SAWYER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Plaintiffs, acting *in propria persona*, appeal from the trial court's order awarding defendants attorney fees and costs in the amount of $65,246.75 after determining that plaintiffs' civil action was frivolous when filed under MCR 2.625(A) and MCL 600.2591. This longstanding and contentious property dispute returns to this Court for the fifth time. In *Hudson v Kleuessendorf*, unpublished per curiam opinion of the Court of Appeals, issued October 11, 2016 (Docket No. 327878) (*Hudson I*), we affirmed the trial court's grant of summary disposition in favor of defendants. After granting summary disposition, the trial court determined plaintiffs' action was frivolous and awarded defendants $38,827.67 in attorney fees and $5,009.65 in costs. However, in *Hudson v Kleuessendorf*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2017 (Docket No. 333124) (*Hudson II*), we determined that the trial court applied the wrong legal framework for making an award of attorney fees and costs, vacated the trial court's original award, and remanded this case to the trial court for reconsideration in light of our opinion.[1] On remand, the trial court once again entered an award of attorney fees and costs, precipitating this current appeal. We affirm.

---

[1] Even before these two unpublished decisions, this Court also entered orders denying plaintiffs' application for leave to appeal two interlocutory decisions of the trial court and their motions for a stay pending those appeals. See *Hudson v Kleuessendorf*, unpublished order of the Court of

Although plaintiffs attempt to relitigate or litigate for the first time other issues, the sole issue in this appeal is whether the trial court erred on remand when it determined plaintiffs' complaint was frivolous at the time of its filing and that MCL 600.2591 required an award of attorney fees and costs in favor of defendants. For the reasons set forth in this opinion, we hold that the trial court did not clearly err on remand when it found that plaintiffs' complaint was frivolous at the time of its filing.

In this Court's decision affirming the trial court's grant of summary disposition in favor of defendants, we summarized the tortuous history of this case:

> Plaintiff[2] and defendants reside across the street from each other on Mallard Street in Fennville, Michigan. Plaintiff's property was platted as part of Recreation Development Subdivision No. 1 ("the subdivision"), while defendants' home is on property adjacent to the subdivision. Mallard Street—as accessed through Blue Goose Avenue—provides the only means of access to defendants' property and that of other property similarly adjacent to the subdivision. Mallard Street is a private drive included in the 1965 plat dedication which created the subdivision. Notably, the plat dedication specifies that "Blue Goose Avenue and Mallard St. is [sic] dedicated as private to the use of the lot owners *and adjacent property owners*."
>
> In 2000, plaintiff initiated a lawsuit against Richard Saputo, the former owner of defendants' property, seeking to prevent Saputo from accessing his property via Blue Goose Avenue and Mallard Street. Plaintiff took the position

---

Appeals, entered March 25, 2015 (Docket No. 325351), and *Hudson v Kleuessendorf*, unpublished order of the Court of Appeals, entered March 25, 2015 (Docket No. 324436). This Court also issued a separate opinion affirming the trial court's denial of Foster's motion to terminate a personal protection order issued against him, see *Benson v Foster*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2015 (Docket No. 315384), and another opinion affirming the trial court's decision finding Foster in criminal contempt for violating that same personal protection order, see *Benson v Foster*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2015 (Docket No. 319516). In a separate case that Foster brought against Ganges Township relating to this same property dispute, this Court rejected his argument that the township failed to comply with the Land Division Act, MCL 560.101 *et seq.*, by allowing the use of private roads by property owners adjacent to his subdivision, which Foster alleged caused flooding damage to his property. See *Foster v Ganges Twp*, unpublished per curiam opinion of the Court of Appeals, issued March 1, 2018 (Docket Nos. 336937 and 337278). There are also several additional relevant trial court litigation matters involving plaintiffs that preceded defendants' purchase of their property in 2010. We will refer to this extended litigation history where necessary to aid our resolution of the attorney fees and costs issue currently before the Court.

[2] Blanche Hudson was not a party to the underlying appeal, thus explaining this Court's use of the single person for plaintiff.

that the streets in question were private roadways solely for use by the subdivision. That case ended when plaintiff voluntarily stipulated to a dismissal with prejudice. In 2003, several property owners in the subdivision sued plaintiff, who had constructed fencing which interfered with use of Mallard Street. In 2005, the Allegan Circuit Court ordered plaintiff to remove the obstructions. The court held that the 1965 plat dedication created an easement over both Blue Goose Avenue and Mallard Street "limited to reasonable ingress and egress throughout the subdivision."

In the present case, plaintiff again seeks to prevent neighbors from using Mallard Street. In particular, plaintiff sought to permanently enjoin defendants from using Mallard Street for any purpose based on the contention that the private roadway was solely for use by the subdivision. Aside from defendants' use of Mallard Street to access their property, plaintiff also brought claims of negligence, trespass, encroachment, and nuisance, alleging that defendants made changes to their property and/or Mallard Street that caused water to drain onto plaintiff's property, resulting in property damage. Plaintiff asked that defendants be compelled to remove their improvements and to re-dig a purported drainage ditch.

Following defendants' motion for summary disposition, the trial court granted summary disposition under MCR 2.116(C)(7) and (C)(10). The trial court concluded that res judicata and laches barred plaintiff's efforts to prevent defendants from using Mallard Street. Regarding plaintiff's other various claims, the trial court granted summary disposition under MCR 2.116(C)(10) because no material questions of fact remained. [*Hudson I*, unpub op at 1-2.]

In *Hudson II*, this Court held that the trial court "utilized the wrong framework" when it awarded attorney fees and costs to defendants pursuant to MCL 600.2591, reasoning that the trial court's order focused on the incorrect period for determining whether a complaint was frivolous because "its findings, at least in part, focused on whether plaintiffs' actions during the course of litigation were frivolous, rather than focusing on the claims at the time they were made." *Hudson II*, unpub op at 1, 5. Although acknowledging "that a party's litigation conduct can be evidence to support that the primary purpose of initiating claims was to harass, embarrass, or injure," this Court criticized the trial court for failing to clearly analyze whether plaintiffs' claims were factually or legally frivolous when plaintiffs filed their complaint. *Id*. at 5. This Court instructed that, on remand, the relevant inquiry must focus on plaintiffs' purpose and knowledge at the time of the filing of the action. *Id*. at 5-6. This Court vacated the award of fees and cost and remanded the case to the trial court for reconsideration in light of its opinion clarifying the proper legal framework. *Id*. at 6. On remand, the trial court awarded defendants $58,212.40 in attorney fees and $7,034.35 in costs, for an award totaling $65,246.75. Plaintiffs appeal from that decision.

In considering plaintiffs' claim of error, we follow closely our standard of review. "A trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017)

-3-

(quotation marks and citation omitted). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "Whether the trial court followed this Court's rulings on remand presents a question subject to de novo review." *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013).

"Michigan follows the 'American rule' with respect to the payment of attorney fees and costs." *Haliw v Sterling Hts*, 471 Mich 700, 706; 691 NW2d 753 (2005). "Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id*. at 707. MCL 600.2591 is an exception authorizing the imposition of attorney fees and costs that, on motion of any party, "require[s] a court to sanction an attorney or party that files a frivolous action or defense." *Meisner Law Group PC*, 321 Mich App at 731; see also MCR 2.625(A)(2) (requiring an award of costs as provided by MCL 500.2591 where the trial court "finds on motion of a party that an action or defense was frivolous"). As set forth in MCL 600.2591(3)(a), civil action is frivolous where at least one of the following conditions exists:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

"To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made, and the factual determination by the trial court depends on the particular facts and circumstances of the claim involved." *DC Mex Holdings LLC v Affordable Land LLC*, 320 Mich App 528, 548; 907 NW2d 611 (2017) (quotation marks, citation, and alteration omitted). "The purpose of imposing sanctions for asserting a frivolous action or defense is to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *Meisner*, 321 Mich App at 731-732.

It was the trial court's initial failure to evaluate whether one or more of these conditions existed *at the time of the filing of the action* that necessitated the trial court to reconsider whether an award of attorney fees and costs pursuant to MCL 600.2591 was justified in this case. See *Hudson II*, unpub op at 4-5. On remand, the trial court once again found that plaintiffs' primary purpose in initiating this lawsuit was to harass, embarrass, or financially injure defendants. We

conclude that there was sufficient evidence in this record to support that factual determination and that the trial court did not clearly err in so finding.[3]

The trial court found persuasive several episodes that predated the filing of plaintiffs' complaint. First, it found persuasive a video showing Foster angrily and publicly threatening litigation that he claimed would cost defendants $100,000 if they did not cede to his demands. The video shows Foster asserting:

> You have no easement to use it. So come on, you want to fight, we are fighting. Now it is time to go to court. You go to court, you know what is going to happen. You are going to need to get an easement by necessity. You know how much that is going to cost you. I've talked to Karen Wellman. She is a real estate specialist. It is going to cost you around a hundred grand. So come on, we are fighting. You don't want to talk, you want to do this bullshit. Fine with me.

We find no reason to conclude that the trial court clearly erred in viewing this video as evidence tending to support a conclusion that plaintiffs pursued this current lawsuit for an improper purpose.

The trial court also found persuasive Foster's history of violating its personal protection order (PPO). We previously addressed this history, which also predates plaintiffs' initiation of the instant case, in *Benson v Foster*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2015 (Docket No. 315384) (*Benson I*), and *Benson v Foster*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2015 (Docket No. 319516) (*Benson II*). In *Benson I*, this Court described the circumstances leading to Benson's obtaining a personal protection order against Foster:

> This case concerns a dispute between [Benson] and [Foster], who are neighbors on Mallard Drive in Fennville. [Benson] lives with John Kluessendorf, his partner, and [Foster] lives across the street. The friction between [Benson] and [Foster] began in the fall of 2011 when [Benson] and Kluessendorf placed trees, shrubs, and stakes on part of [Benson's] property that abutted Mallard Drive; the area previously served as a drainage ditch. [Foster] did not approve of

---

[3] The trial court also held that, under MCL 600.2591(3)(a)(*ii*), plaintiffs lacked reasonable belief to believe that their factual allegations were true and that, under MCL 600.2591(3)(a)(*iii*), plaintiffs' claims were devoid of legal merit. The trial court made these findings after reviewing our affirmance of its summary disposition dismissal of plaintiffs' complaint on res judicata grounds in *Hudson I*, and, overall, a decades-long litigation history comprising multiple different cases that adequately established how plaintiffs knew of longstanding water runoff issues not attributable to defendants' conduct and the exact contours of the neighboring properties. Although we discern no clear error in these additional factual findings, we again note that defendants needed to satisfy only one of these three conditions to warrant an award of attorney fees and costs.

the fact that [Benson] filled in the drainage ditch and soon became upset with [Benson] and Kluessendorf. This feud escalated as [Foster] took various actions, including driving his truck into the trees and/or stakes, shining floodlights into [Benson's] home at night, and parking his truck in such a manner as to block [Benson's] access to Mallard Road.

On May 2, 2012, [Benson] filed a petition for an ex parte PPO against [Foster]. The petition alleged that [Foster] drove his truck onto [Benson's] property, drove his truck at [Benson], ran over [Benson's] stakes and trees multiple times, ran over [Benson's] shrub and stakes with a snow blower, threatened [Benson] verbally, shined floodlights into [Benson's] home during the evening for weeks, blocked [Benson's] only way of exiting Mallard Drive multiple times, and personally removed a survey stake from [Benson's] property. The petition alleged that because of the floodlights that [Foster] aimed at their home for a period of approximately six weeks, [Benson] and Kluessendorf were unable to sleep at night. In addition, the petition alleged that [Benson] and Kluessendorf contacted a realtor about selling their home because of [Foster's] actions. On May 4, 2012, the trial court entered a yearlong ex parte PPO against respondent. [*Benson I*, unpub op at 1-2.]

This Court held that this type of stalking, harassment, and unconsented contact was sufficient to result in the issuance of a PPO and that Foster's actions would cause a reasonable person to suffer emotional distress. *Id*. Subsequently, in *Benson II*, this Court also held that sufficient evidence existed to prove beyond a reasonable doubt that Foster violated the PPO. See *Benson II*, unpub op at 4. The opinion describes one of the incidents in detail. On October 9, 2012, Foster backed his pickup truck into defendants' newly installed fence, damaging it. *Id*. There was evidence that Foster walked right up to the fence beforehand and that another one of Foster's companions "who was standing nearby, raise[d] her hands in the air, as if to celebrate." *Id*. Further, the Michigan State Police trooper who responded to the incident testified that the angle of the tire marks was inconsistent with an accident. *Id*. He believed that Foster "deliberately backed directly into the fence at an almost 90 degree angle." *Id*. Hewing to our clear error standard of review, this longstanding history of hostile and ill-advised behavior by plaintiffs against defendants firmly supported the trial court's conclusion of a primary and improper motivation to harass, embarrass, and injure when plaintiffs initiated this lawsuit.

The trial court also found persuasive how—both before the inception of this lawsuit and during the course of litigation—plaintiffs repeatedly hurled numerous inflammatory and unproven attacks against defendants that had no material bearing on the legal merit of plaintiffs' claims. As we previously held in *Hudson II*, unpub op at 5, the trial court could properly consider conduct prefiling as well as conduct during the course of this litigation. Accordingly, plaintiffs' extremely uncivil behavior directing irrelevant and defamatory statements against defendants is additional competent evidence supporting the trial court's factual determination of a purpose to embarrass, harass, or injure.

Finally, we review Judge Kengis's award of costs and attorney fees for an abuse of discretion. After a review of his oral opinion, it is clear to us that he examined all of the factors set forth in *Pirgu v United Services Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016), and *Wood*

*v DAIIE*, 413 Mich 573; 321 NW2d 653 (1982), and that the award was reasonable and not an abuse of discretion.

Affirmed.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro