*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LOREY LORRAINE JOHNSON, also known as
LOREY LORRAINE LOVELL,

      Plaintiff-Appellee,

v

JAMES EDWARD JOHNSON,

      Defendant-Appellant.

UNPUBLISHED
November 14, 2019

No. 343661
Washtenaw Circuit Court
LC No. 17-001432-DO

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

In this divorce action, defendant appeals as of right from the trial court's entry of a judgment of divorce following a bench trial. Defendant argues that the trial court erred by awarding plaintiff 100% of the proceeds from the sale of the parties' marital home. Defendant also argues that the trial court abused its discretion when it awarded attorney fees as sanctions under MCR 2.114 and MCL 600.2591.[1] We affirm the trial court's award of the proceeds from the marital home to plaintiff, but vacate the trial court's award of attorney fees.

## I. BACKGROUND

In October 2014, plaintiff's husband of 23 years passed away. The following month, using proceeds from her late husband's life insurance policy, plaintiff purchased a home in Tecumseh, Michigan. Plaintiff first met defendant at a dinner party sometime in March 2015. Nearly a year later, on February 28, 2016, they went on their first date. During that first date, defendant asked plaintiff about her steady employment and considerable income, and also

---

[1] The trial court also awarded sanctions against defense counsel. Although defense counsel filed a claim of cross-appeal, this Court eventually dismissed the cross-appeal after defense counsel failed to timely file a brief. *Johnson v Johnson*, unpublished order of the court of appeals, entered December 26, 2018 (Docket No. 343661).

learned that she owned her home free and clear. Five days later, on March 4, 2016, plaintiff and defendant married in a courthouse wedding before a justice of the peace. According to plaintiff, defendant did not allow her to tell anyone, including her children, about the wedding. Only a few weeks later, at defendant's insistence, plaintiff executed a quitclaim deed naming defendant co-owner of her Tecumseh home. Recognizing that the home represented just about all of her net worth, plaintiff had subsequent reservations about that decision. She expressed her concerns to defendant, but he did not sign a deed transferring the property back. Defendant quit his job shortly after the marriage and property transfer, and did not work regularly for the majority of the parties' marriage. This was in spite of his holding a bachelor's degree in business, a real estate license, and a commercial driver's license (CDL).

On defendant's insistence, the couple agreed to sell plaintiff's Tecumseh home and used the proceeds from the sale ($175,000) toward the purchase of another property in Ypsilanti. Defendant separately contributed $10,000 toward purchasing the Ypsilanti property. Between March 4, 2016 and when the parties separated in August 2017, plaintiff contributed approximately $100,000, by virtue of her income, to the marital estate. Defendant did not dispute this number. Defendant, on the other hand, contributed between $40,000 and $50,000 to the marital estate from his income, which he gained from various jobs and unemployment. Defendant also contributed $56,000 into a joint checking account, which he had gained from the sale of property he owned in Ohio.

Plaintiff filed for divorce because she believed that defendant had emotionally abused her, explaining that defendant "would play on [her] religion and tell [her] that's not what God would want, that [they] were husband and wife and that [she] was supposed to give everything to him." She also explained that he prevented her from talking with her family, did not allow her children to come over, and stalked her on several occasions. She also described an incident when defendant got a key to her locked bedroom and she woke up to find him standing over her. He also rummaged through her personal items in her drawers. These incidents led to the trial court issuing a personal protection order (PPO) against defendant.

During the course of the divorce proceedings, the trial court permitted the sale of the parties' Ypsilanti property, resulting in approximately $155,000 in equity placed into escrow for eventual distribution. The sale of the home was delayed because defense counsel, without court approval, had filed an attorneys' lien on the property. This was one of several incidents in which defendant and his counsel delayed or disrupted the divorce proceedings. By way of example, on another occasion, defense counsel sent an armed representative to oversee the removal of personal property from the home. After refusing to put away his firearm, the armed representative sat down at the kitchen table, and only left after plaintiff called the police.

At the conclusion of the bench trial, the trial court entered the judgment of divorce, awarding plaintiff, *inter alia*, 100% of the proceeds from the sale of the Ypsilanti property. Plaintiff later filed a motion requesting attorney's fees based on defendant and defense counsel's allegedly unreasonable conduct throughout the case. Following a hearing, the trial court granted plaintiff's request. This appeal follows.

## II. DIVISION OF PROPERTY

On appeal, defendant first argues that the trial court erred by awarding 100% of the proceeds from the sale of the marital home to plaintiff. We disagree.

### A. STANDARD OF REVIEW

As explained in *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014):

> In a divorce action, this Court reviews for clear error a trial court's factual findings on the division of marital property and whether a particular asset qualifies as marital or separate property. Findings of fact are clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. Special deference is afforded to a trial court's factual findings that are based on witness credibility. This Court further reviews whether a trial court's dispositional rulings are fair and equitable in light of the trial court's findings of fact, but this Court will reverse only if definitely and firmly convinced that the disposition is inequitable. [Quotation marks and citations omitted.]

### B. ANALYSIS

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger v Berger*, 277 Mich App 700, 716-717; 747 NW2d 336 (2008). Marital property need not be divided equally, only equitably. *Richards v Richards*, 310 Mich App 683, 694; 874 NW2d 704 (2015). Our Supreme Court in *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 897 (1992) laid out the factors courts are to consider to assist them in equitably dividing marital property:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case.

Defendant first argues that "[t]he Trial Court erred when it found that the property was [plaintiff's] separate property and awarded the entire property to her." This statement, however, is not an accurate recitation of the trial court's decision—the trial court clearly treated the proceeds from the sale of the Ypsilanti residence as marital property and distributed them in accordance with *Sparks*. Thus, this argument fails because it is based on a faulty premise.

In arguing that the trial court's division of the property resulted in an inequitable distribution, defendant does little to address the *Sparks* factors in light of the trial court's factual findings. He appears to focus on only a single *Sparks* factor: contributions of the parties to the marital estate. Defendant contends that he made contributions to the marital estate that the trial court ignored, which, he argues, resulted in an inequitable award. Specifically, defendant

contends that the trial court ignored the $10,000 that defendant put towards purchasing the marital home, $56,000 that he placed into a joint checking account, $15,000 that was used during the marriage from pre-marriage "cash and bank accounts," and $7,500 in credit card debt that he incurred during the marriage. Defendant contends that, added all up, he "lost around $88,500 relative to his position prior to marriage." Yet defendant ignores that the trial court actually did factor in the $56,000 defendant placed in a joint account when considering the parties' contributions to the marital estate. The court reasoned that the parties' contributions to the marital estate were equal because plaintiff contributed $100,000 worth of income, while defendant placed $56,000 into the joint account and contributed $40,000 to $50,000 in income.[2] Thus, defendant's argument should actually be that he "lost around [$32,500 ($88,500-$56,000)] relative to his position prior to marriage."

When properly framed in this way, defendant's argument does not warrant relief. The trial court reasoned that by awarding plaintiff 100% of the proceeds from the sale of the marital estate, plaintiff still lost, "depending on how you calculated it[,] anywhere from $20,000 to $30,000." The trial court concluded that this loss, compared to defendant's loss, was "fair and just under the circumstances." The trial court reached this conclusion by applying the *Sparks* factors. When the trial court walked through the *Sparks* factors, it concluded that some of the factors did not apply, which defendant does not contest on appeal. Of the factors that did apply, the trial court found that the parties' marriage was short, they contributed equally to the marital estate, they were of similar age and health, and they had similar earning abilities. As for past relations and conduct of the parties, the trial court found that defendant preyed on plaintiff while she was emotionally vulnerable following the loss of her husband, and took advantage of her emotional state to convince her to marry him in order to benefit himself financially. The trial court further found that, once married, defendant emotionally abused plaintiff to try to keep her locked in the marriage, and that this abuse continued throughout the divorce proceedings. Defendant largely does not contest these factual findings on appeal, and to the extent that he arguably does, we conclude that the findings were not clearly erroneous. In light of the trial court's factual findings, we are not definitely and firmly convinced that the trial court's distribution of the marital property was inequitable.

---

[2] Defendant seems to argue at one point that the trial court should not have considered the parties to have contributed equally to the marital estate because plaintiff spent exuberantly on herself to the exclusion of defendant. In support of this argument, defendant contends that "[t]he trial court erred by refusing to examine the bank records, which would have better illuminated the contributions of the parties to the marital estate." But defendant does not provide any caselaw or statutory authority for his position that the trial court erred by refusing to examine the parties' bank records, so we deem this argument abandoned. *Lentz v Lentz*, 271 Mich App 465, 478 n 7; 721 NW2d 861 (2006) ("An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position.") (Quotation marks and citation omitted.)

## II. ATTORNEY FEES

Next, defendant maintains that the trial court abused its discretion in awarding attorney fees. Defendant contends that there was no legal basis for awarding sanctions under MCL 600.2591 or MCR 2.114(D) when the allegations at issue had nothing to do with the assertion of a frivolous defense or the improper signing of a document. Defendant also contends that the trial court improperly relied upon conduct happening during or even before the parties' marriage, and seemingly sought to punish defendant for what it viewed as defendant's taking advantage of plaintiff's emotional vulnerability due to the loss of her previous spouse. Essentially, defendant argues that the trial court's ruling impermissibly expanded the type of offending conduct contemplated by the cited statute and court rule. We agree.

### A. STANDARD OF REVIEW

"A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). But "[a] trial court's conclusions of law are not subject to the 'clearly erroneous' standard of review." *Beason v Beason*, 435 Mich 791, 804; 460 NW2d 207 (1990). Rather, questions of law are reviewed de novo. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008).

### B. ANALYSIS

"Michigan follows the 'American rule' with respect to the payment of attorney fees and costs." *Haliw v Sterling Hts*, 471 Mich 700, 706; 691 NW2d 753 (2005). "Under the American rule, attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Id.* at 707. MCL 600.2591 is one exception authorizing the imposition of attorney fees and costs. That statute "require[s] a court to sanction an attorney or party that files a frivolous action or defense." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). MCL 600.2591 states, in relevant part:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
>
> * * *
>
> (3) As used in this section:
>
> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

-5-

(*iii*) The party's legal position was devoid of arguable legal merit.

To determine whether sanctions are appropriate under MCL 600.2591, it is necessary to evaluate the claims or defenses at issue at the time they were made, and any determination of frivolity depends on the particular facts and circumstances of the claim involved. *DC Mex Holdings LLC v Affordable Land LLC*, 320 Mich App 528, 548; 907 NW2d 611 (2017). "The purpose of imposing sanctions for asserting a frivolous action or defense is to deter parties and their attorneys from filing documents or asserting claims or defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *Meisner*, 321 Mich App at 731-732.

"MCR 2.114(D)[3] imposes various requirements of good faith and reasonable inquiry upon the signatories of legal pleadings." *People v Herrera (On Remand)*, 204 Mich App 333, 337; 514 NW2d 543 (1994). At all times relevant to this case, MCR 2.114(D) provided that all documents submitted by a party must be signed by that party or the party's attorney, which certified that:

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a violation of MCR 2.114(D) was found, the trial court was required to impose sanctions under MCR 2.114(E). *Contel Sys Corp v Gores*, 183 Mich App 706, 710-711; 455 NW2d 398 (1990).

The trial court's stated reasons for finding frivolousness justifying the award attorney fees can be broken down into several categories: (1) defendant's conduct relating to the quitclaim deed for the Tecumseh property; (2) defendant's conduct relating to and necessitating the issuance of a PPO; (3) defense counsel's imposition of an attorneys' lien impeding the sale of the Ypsilanti property; and (4) defense counsel's use of an armed representative during property removal. Defendant does not directly challenge any of the trial court's factual findings as to these events, but rather asserts that, as a matter of law, the underlying conduct is not sanctionable under the plain language of the cited legal rules. Therefore, we limit our review to whether one or more of these factual findings can provide the necessary basis for the imposition of attorney fees under MCL 600.2591 or MCR 2.114.

---

[3] MCR 2.114 was repealed effective September 1, 2018. The existing language transferred to MCR 1.109. The court rule remained in effect at the time the trial court awarded sanctions.

By its terms, MCL 600.2591 required the trial court to make a factual finding "that a civil action or defense to a civil action was frivolous." Yet, as pointed out by defendant, none of the trial court's findings referred to a civil action or defense to a civil action, and plaintiff does not appear to contend otherwise. Plaintiff instead broadly asserts that defendant's *general* conduct was sanctionable because it evidenced an intent "to harass and injure the plaintiff prior to and during the marriage." In so doing, plaintiff completely fails to address the basis for defendant's contention for why the conduct is not sanctionable: that the trial court's findings do not refer to a civil action or defense to a civil action.

Addressing the issue raised by defendant, we note that, although MCL 600.2591 defines what "frivolous" means, it does not define what type of conduct constitutes the threshold element of "a civil action or defense to a civil action." However, it is self-evident that none of defendant's or defense counsel's conduct outside of the courtroom in this case related to "a civil action or defense to a civil action," so we need not go into detail defining those terms. This is especially true because turning to the term that the statute does define—"frivolous"—it is clear that none of defendant's or defense counsel's improper conduct could be considered "frivolous" under MCL 600.2591.

"Frivolous" under MCL 600.2591(3)(a)(*ii*) and (a)(*iii*) refers to a "party's legal position," and none of the trial court's factual findings refer to defendant's legal position. Thus, the only possible basis for the court's finding of frivolousness was under MCL 600.2591(3)(a)(*i*), which states that "frivolous" means that "[t]he party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party." At best, it could be said that the trial court ruled that defendant's actions outside of the courtroom showed that his primary purpose in defending this action "was to harass, embarrass, or injure" plaintiff. The general principle behind such a ruling is somewhat troubling, as it is difficult to imagine how a defendant's choice to simply exercise his or her right to a defense could be deemed "frivolous." At any rate, certainly under the circumstances here, defendant's choice to defend himself— regardless of what other motives he had—was not frivolous. The parties had comingled many assets during their short marriage, and it was unclear what would constitute an equitable distribution of the marital estate following the divorce. Therefore, while we agree with the trial court that defendant and defense counsel's conduct was, at best, highly questionable, MCL 600.2591(3)(a)(*i*) does not allow the imposition of attorney fees for *all* conduct intended to harass, embarrass, or injure; it allows sanctions only if "[t]he party's primary purpose *in initiating the action or asserting the defense* was to harass, embarrass, or injure the prevailing party." MCL 600.2591(a)(*i*) (emphasis added).

Because the offending conduct did not relate to the initiation of a civil action or the assertion of a particular defense and did not otherwise fall under any definition of "frivolous," we hold that the trial court's stated factual findings simply did not constitute offending conduct under MCL 600.2591.

Likewise, the trial court's factual findings are deficient and cannot support an award of attorney fees under MCR 2.114. At most, the only trial court finding even plausibly triggering sanctions under MCR 2.114 was the attorney's lien that defense counsel filed on the Ypsilanti property when attempting to secure his client's payment of fees. The other categories simply do not relate to the signing of legal documents. However, plaintiff's counsel explained before the

trial court that he separately calculated his fees stemming from defense counsel's improper use of an attorneys' lien and submitted to the trial court that he was "posing [these fees] on [defense counsel] alone" because it was defense counsel's failure to provide a release to the title agency that impacted the property closing. As a result, the trial court's judgment reflects that it entered this separate award against defense counsel only. Therefore, this rationale, even if justified against defense counsel, cannot support the award of attorney fees against defendant. Accordingly, we vacate the trial court's award of attorney fees against defendant under MCL 600.2591 and MCR 2.114.

Affirmed in part and vacated in part. No taxable costs under MCR 7.219, neither party having prevailed in full.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford

-8-