*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

       Plaintiff-Appellant,

v

WAYNE COUNTY ELECTION COMMISSION,

       Defendant

and

KIEFER JOSEPH COX and NICHOLAS JOHN HATHAWAY,

       Defendants-Appellees.

UNPUBLISHED
May 11, 2023

No. 362547
Wayne Circuit Court
LC No. 22-005710-AW

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Plaintiff, Robert Davis (Davis), appeals as of right the order of the trial court granting the renewed motion for sanctions and attorney fees of defendants Kiefer Joseph Cox (Cox) and Nicholas John Hathaway (Hathaway) (collectively, defendants). The trial court clearly erred in concluding that Davis's complaint was devoid of arguable legal merit and intended to harass. We, therefore, reverse and remand.

## I. BACKGROUND

This case originates from a complaint Davis filed seeking to preclude the inclusion of defendants' names on the 2022 primary- and general-election ballots for filing affidavits of identity (AOIs) that purportedly failed to comply with statutory requirements. In mid-April 2022, Cox and Hathaway filed AOIs as a requirement to run for judicial office in the Third Judicial Circuit of Michigan (commonly, "Wayne County Circuit Court"). In relevant part, the portion of the AOI entitled "office sought/ballot information" provides space for the candidate to identify the "office name," "jurisdiction," and "district/circuit/ward" for the office sought. In a spaced marked for

-1-

"judicial candidates only," the candidate must also mark one of three choices: (1) incumbent position, (2) non-incumbent position, or (3) new judgeship. At the top of this section, and relevant to Hathaway for purposes of this case, the AOI form has a space for candidates to mark if their "name formally changed in the last 10 years for a reason *other than marriage* or divorce" and, if checked, space for the candidates to "print [their] full former name[.]" It also has a series of boxes to be filled out with the "exact name [the candidate] would like printed on the ballot[.]"

Here, both defendants were candidates for the "office" of judge. The "circuit" was the Third Judicial Circuit of Michigan. The "jurisdiction" was Wayne County, which is coextensive with the Third Judicial Circuit.

On Hathaway's AOI, the candidate identified his name as Nicholas John Hathaway. Approximately 2½ years before filing his AOI, in mid-November 2019, Hathaway changed his name from Nicholas John Bobak to Nicholas John Bobak Hathaway.[1] On his 2022 AOI, Hathaway did not fill out the space for formal name changes, and listed Nicholas John Hathaway as the name he wanted printed on the ballot. Hathaway identified the office sought as "Judge," the jurisdiction as "Circuit Court," and the district, circuit, or ward as "3rd." Hathaway sought a "non-incumbent position."

On Cox's AOI, the candidate identified "Circuit Court" as the office name, did not fill out the space for jurisdiction, and listed "3rd Circuit" for the district, circuit, or ward. Under the portion of the AOI for "judicial candidates only," Cox marked that he was running for a "new judgeship" position.

In late April 2022, Davis sued Secretary of State Jocelyn Benson in the Court of Claims. Citing the same alleged defects in defendants' AOIs, and seeking the same relief, at issue in this appeal (described below), Davis sought to disqualify defendants from the August 2022 primary-election ballot. In mid-May 2022, however, Davis voluntarily dismissed the Court of Claims case.

Shortly before he dismissed his Court of Claims case, Davis sued defendants and the Wayne County Election Commission in Wayne Circuit Court, seeking declaratory and injunctive relief, and the issuance of a writ mandamus, as follows: (1) declarations that Cox's and Hathaway's AOI did not comply with MCL 168.558 by failing to include the correct title of the office sought and the jurisdiction, and an order enjoining Cox and Hathaway from holding themselves out as candidates and the Wayne County Election Commission from printing or including them on the primary- and general-election ballots; (2) a declaration that Hathaway's AOI did not comply with MCL 168.558 because he failed to include his legal name and former name on the AOI (and a similar order enjoining Hathaway and the Wayne County Election Commission); and (3) issuance of a writ of mandamus compelling the Wayne County Election Commission to remove, and not print, defendants' names on the primary- and general-election ballots as judicial candidates for

---

[1] We take judicial notice of the fact that Hathaway changed his name approximately one year before running unsuccessfully for the same judicial office in the November 2020 election, and one month before creating his campaign committee. This was approximately 11 years after Hathaway's marriage.

Wayne Circuit Court. Alongside his complaint, Davis filed an emergency motion seeking the same relief.

The trial court held a hearing on Davis's emergency motion. At the hearing, defendants made an oral motion for attorney fees and costs, which Davis urged the court to reject. The trial court found that Davis's argument regarding the alleged errors in Cox's AOI elevated form over substance and that it was clear from information in Cox's AOI that he was running for a judgeship in the Third Circuit Court in Wayne County. The court was similarly unpersuaded by Davis's argument about Hathaway's AOI. Despite the discussion related to the AOIs, however, the trial court dismissed Davis's complaint based on defendants' argument that the Secretary of State had the sole authority to determine certification of candidates for circuit court elections and, therefore, the Court of Claims had exclusive jurisdiction. The court also found that Davis filed a frivolous complaint and awarded attorney fees to defendants. Accordingly, the trial court entered an order denying Davis's emergency motion and dismissing his complaint, finding that it lacked subject-matter jurisdiction over the case.

Davis appealed, and this Court, in *Davis v Wayne Co Election Comm*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361546), vacated the trial court's order, in part, and remanded for further proceedings. First, this Court determined that the trial court erred when it found that it lacked subject-matter jurisdiction. *Id*. at 2-3. This Court also addressed the merits of Davis's claims—that defendants' respective AOIs failed to comply with statutory requirements. *Id*. at 3-5. The *Davis* Court held that Cox and Hathaway individually complied with the requirements that their AOIs include (1) the title of the office sought and (2) the "jurisdiction, district, circuit, or ward" in which the office is positioned. *Id*. at 4-5. The Court also concluded that Davis failed to demonstrate that Hathaway's AOI was deficient because it listed his name as "Nicholas John Hathaway," not "Nicholas John Bobak Hathaway." *Id*.

The *Davis* Court also vacated the trial court's order granting of sanctions because the trial court's conclusion that Davis's complaint was frivolous was "premised on the erroneous conclusion that it lacked jurisdiction." *Davis*, unpub op at 5. The Court vacated the trial court's award of attorneys' fees and costs, instructing that, on remand, defendants could "seek sanctions on the basis that the complaint was frivolous for other reasons." *Id*. The Court stressed, however, that its decision "should not be read as implying that the complaint is or is not frivolous," instead "leav[ing] that decision to the trial court in the first instance." *Id*. at 5-6. Accordingly, this Court affirmed the trial court's dismissal of Davis's complaint, but vacated the portion of the trial court's order awarding sanctions and remanding for further proceedings. *Id*. at 6.

In mid-June 2022, defendants renewed their motion for sanctions and attorney fees against Davis for filing a frivolous complaint, moving for sanctions under MCL 600.2591. They asserted the complaint was devoid of arguable legal merit and that sanctions were appropriate for several reasons. First, they argued the complaint was frivolous because Davis sued the Secretary of State in the Court of Claims, seeking similar relief, and, despite having alleged that the Court of Claims had exclusive jurisdiction, sued defendants in circuit court. Second, defendants argued Davis was an experienced, election-law litigator, so he knew his lawsuit was frivolous. Third, they argued Davis dismissed the Court of Claims lawsuit without prejudice in order to leave defendants subject to further litigation. Fourth, defendants argued that Davis's acknowledgment that he did not support defendants as candidates demonstrated that his lawsuit was meant to harass them. Fifth,

they argued that Davis's argument, that Cox had to specify the exact position he was running for, rather than stating "Circuit Court," was devoid of any merit because there was no other position to run for in the circuit court. Finally, defendants argued that Davis's complaint was frivolous due to the trial court's finding that his exclusive remedy was in the Court of Claims.

Defendants also asserted that additional information had "come to light" that supported imposing sanctions against Davis. Notably, defendants referenced statements from Davis at the mid-May 2022 hearing on his emergency motion related to why he dismissed his Court of Claims case. Specifically, defendants referenced Davis's statements that he was informed that the press of business before the Court of Claims would delay the progress of his case.

Defendants requested a total of $34,442 in attorney fees: $21,963 in attorney fees for Cox; and $12,479 in attorney fees for Hathaway. This covered fees accumulated from May 4, 2022, through June 6, 2022. It also included attorney fees and costs billed for Cox and Hathaway's appeal in Court of Appeals Docket No. 361546. Defendants argued that their requested fees were reasonable because of the nature and difficulty of the case, the quick response time required, and their attorneys' experience. They attached to their motion documentation supporting the requested fees.

In early August 2022, Davis responded to defendants' motion for sanctions and attorney fees. He argued that his complaint was not frivolous because it was not devoid of arguable legal merit and he did not file it intending to harass defendants. Davis also briefly argued that defendants' requested attorney fees were not reasonable, albeit with limited specific arguments or supporting authority. He also asked for an evidentiary hearing on the issue of attorney fees, if the trial court granted defendants' motion for sanctions.

The trial court held two hearings related to defendants' motion for sanctions, one on August 3, 2022, the other on August 9, 2022. At the first hearing, the trial court found that Davis filed his complaint intending to harass defendants and that it was devoid of arguable legal merit. On the harassment issue, the court noted that neither Cox nor Hathaway "were [Davis's] preferred candidate," and found that his dismissal of his Court of Claims suit without prejudice left defendants "open and vulnerable to the notion that the action certainly could be brought again." It also found that Davis's reason for dismissing his Court of Claims suit supported its finding that he intended to harass defendants by filing his complaint in circuit court. The trial court also found that Davis's "attack" on defendants' AOIs was devoid of arguable legal merit, explaining that this Court had "rejected all of the substantive arguments" Davis made. It noted that Davis had "engaged in election litigation" for "years, and years," and found that his arguments about the AOIs "were certainly, totally devoid of any arguable legal merit." The trial court believed that this Court's "substantive reasoning" in *Davis* "show[ed] that, as well." Accordingly, the court found that Davis filed a frivolous complaint and that the parties could proceed to an evidentiary hearing on the issue of attorney fees.

Davis objected to immediately proceeding to a hearing on the issue of the reasonableness of the attorney fees. Though it acknowledged his objections, the trial court allowed defendants' attorney to discuss the reasonableness of the requested fees. After discussion on that issue, the court indicated it would take the matter under advisement, review defendants' supporting documentation, and render its decision at the next hearing.

At the August 9, 2022 hearing, before announcing its decision on defendants' request for attorney fees and costs, the trial court restated its findings related to the frivolousness of Davis's complaint. It reiterated its finding that Davis filed the case to harass defendants, but, "more importantly," that Davis's "legal position was devoid of arguable legal merit." The trial court stated: "[I]n this particular matter, I think we can look to the substantive decision made . . . by the Court of Appeals, and most specifically, with regards to their reasoning, and what they said about this particular case." In the trial court's view, this Court's "finding" in Court of Appeals Docket No. 361546 was "that there was no merit to this particular challenge that was brought." The trial court then determined that defendants' requested fees were reasonable, awarding attorneys' fees in the amount of $22,563 for Cox and $13,079 for Hathaway, and dismissed Davis's complaint with prejudice. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision whether to impose sanctions for an abuse of discretion. *Fette v Peters Constr Co*, 310 Mich App 535, 549; 871 NW2d 877 (2015). We also review its decision to award attorney fees and its determination of the reasonableness of those fees for abuse of discretion. *Ayotte v Dep't of Health and Human Servs*, 337 Mich App 29, 38; 972 NW2d 282 (2021). But a trial court's "underlying factual findings are reviewed for clear error, while any underlying questions of law are reviewed de novo." *Ayotte*, 337 Mich App at 38. Clear error exists if this Court is left with a definite and firm conviction that a mistake was made. *Id*. A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Id*. But "a trial court's findings with regard to whether a claim or defense was frivolous, and whether sanctions may be imposed, will not be disturbed unless it is clearly erroneous." *Id*. (quotation marks and citation omitted).

We review de novo questions of statutory interpretation. *Yopek v Brighton Airport Ass'n, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359065); slip op at 3 (citation omitted).

> The goal of statutory interpretation is to determine and apply the intent of the Legislature. The first step in determining legislative intent is to examine the specific language of the statute. If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written. The provisions of a statute must be read in the context of the entire statute to produce a harmonious whole. This Court must consider the object of the statute and the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. [*Id*. at ___; slip op at 4-5 (quotation marks and citations omitted).]

## III. THE TRIAL COURT ERRED WHEN IT FOUND THAT DAVIS FILED A FRIVOLOUS COMPLAINT AND IMPOSED SANCTIONS

Davis asserts that the trial court erred when it found that he filed a frivolous complaint, so its order awarding attorney fees and costs must be reversed. We agree.

## A. LEGAL STANDARD FOR SANCTIONS BASED ON FRIVOLOUS FILINGS

MCR 1.109(E) governs the standards for evaluating whether a lower court filing is frivolous. It provides, in relevant part:

(5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(7) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages. [MCR 1.109(E)(5) through (7).]

MCL 600.2591 governs the awarding of fees and costs for the filling of a frivolous civil action or defense to a civil action. It provides:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

-6-

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record. [MCL 600.2591.]

These provisions "impose an affirmative duty on each attorney to conduct a reasonable inquiry into the factual and legal viability of a pleading before it is signed." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 731; 909 NW2d 890 (2017). "The reasonableness of the attorney's inquiry is determined by an objective standard." *Id*. Courts impose sanctions against attorneys who file frivolous actions to deter attorneys from filing documents or asserting claims before sufficient investigation and research. *Id*. at 731-732. Sanctions are also meant to deter attorneys from filing documents or raising claims that are intended to serve an improper purpose. *Id*. When evaluating whether a claim is frivolous, the court must do so based on the circumstances at the time the plaintiff asserted the claim. *Id*. at 732.

Here, the trial court found that Davis filed a frivolous complaint under MCL 600.2591(3)(a)(*i*) (intended to harass) and (*iii*) (devoid of arguable legal merit). The trial court discussed its findings on this issue at both the August 3, 2022 hearing and the August 9, 2022 hearing. It clearly erred in finding Davis's complaint was frivolous under either criterion: intended to harass or devoid of arguable legal merit. We discuss both in turn.

## B. THE TRIAL COURT CLEARLY ERRED IN FINDING THAT DAVIS'S CLAIMS WERE DEVOID OF ARGUABLE LEGAL MERIT

The trial court clearly erred when it found that Davis's claims were devoid of arguable legal merit because (1) it improperly relied on statements in this Court's decision in *Davis*; and (2) separate from its reliance on *Davis*, its findings about the arguable legal merit of Davis's claims were wrong.

First, the trial court appears to have based its finding of lack of arguable legal merit on its misreading of this Court's decision in *Davis*. The trial court viewed this Court's opinion in *Davis* as determining that "there was no merit to this particular challenge that was brought." This was incorrect. Although this Court indicated it was "address[ing] the merits of the issues raised in [Davis's] complaint," *Davis*, unpub op at 4, it did not hold that there was "no merit" to Davis's claims simply by rejecting the claims. See *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 487; 760 NW2d 526 (2008) ("[T]he mere fact that [the] plaintiff did not ultimately prevail on its legal position does not render its filing of the complaint in Michigan frivolous."). The trial court's view of this Court's opinion in *Davis* directly contradicts express statements in that opinion. In addressing the issue of sanctions, the *Davis* Court vacated the award of sanctions because it was "premised on the erroneous conclusion that [the trial court] lacked jurisdiction." *Davis*, unpub op at 5. The Court instructed: "On remand, defendants may seek sanctions on the basis that the complaint was frivolous for other reasons. *Our decision today should not be read as implying that the complaint is or is not frivolous*. Rather, we leave that decision to the trial court in the first instance." *Id*. at 5-6 (emphasis added).

-7-

Second, aside from this misreading of *Davis*, we are not persuaded that Davis's claims here were devoid of arguable legal merit and, thus, rendered his complaint frivolous. The objective standard for the duty to research and investigate the legal and factual viability of a claim is not dictated by outcome, see *Meisner*, 321 Mich App at 731, but the outcomes of several closely related cases tend to suggest that Davis satisfied this duty. For example, in *Berry v Garrett*, 316 Mich App 37, 40; 890 NW2d 882 (2016), the intervening defendants won the 2016 primary election for Plymouth Township's trustee and supervisor. Their AOIs, however, did not include a precinct number, as required by statute, so the plaintiff voter sought a writ of mandamus to preclude their inclusion on the primary-election ballot. *Id*. In concluding that the plaintiff was entitled to mandamus, this Court rejected the defendants' argument that the candidates' noncompliance was a " 'small detail' that should be overlooked." *Id*. at 50-51. Explaining its rejection, this Court stated that it is "not our role to make policy decisions regarding which of the Legislature's mandates can be ignored as insignificant." *Id*. Similarly, in *Moore v Genesee Co*, 337 Mich App 723, 729-730; 976 NW2d 921 (2021), we held that an applicant who failed to check the box confirming her United States citizenship was a "critical error" that rendered her AOI facially invalid, and precluded county officials from certifying her candidacy.

This Court's decision in *Reed-Pratt v Detroit City Clerk*, 339 Mich App 510; 984 NW2d 794 (2021), decided after *Moore*, also supports Davis's position. There, this Court stated: "The failure to supply a facially proper affidavit of identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot. Candidates are required to strictly comply with MCL 168.558." *Id*. at 517-518. But see *Moore*, 337 Mich App at 729-730 (referencing the same language as in *Reed-Pratt* but further stating that "strict compliance with the content requirements may be achieved even if the applicant fills out the form in an irregular or improper manner.") (Citations omitted).

*Berry*, *Moore*, and *Reed-Pratt* each support the argument that Michigan election law requires strict compliance with the requirements of a facially proper affidavit of identity. *Reed-Pratt*, 339 Mich App at 517-518; *Moore*, 337 Mich App at 729-730; *Berry*, 316 Mich App at 40, 50-51. Based on the legal landscape at the time Davis filed this action, it was not unreasonable to rely on these cases as support for his theory that defendants' AOIs were facially defective because of their irregularities in noting jurisdiction. Davis may have ultimately been wrong but his legal argument was not devoid of merit.

*Berry*, *Moore*, and *Reed-Pratt*, therefore, support the conclusion that Davis's claims were not devoid of arguable legal merit. Caselaw of this Court existed at the time Davis filed his complaint suggesting that a candidate's AOI must strictly conform to statutory requirements or, otherwise, be subject to preclusion from certification or placement on a ballot. This is particularly true for a *pro se* litigant.[2] Even though this Court rejected his claims in Docket No. 361546, see *Davis*, unpub op at 3-5, Davis's position was not devoid of arguable legal merit and, therefore, was not frivolous at the time he asserted the claim. *Meisner Law Group PC*, 321 Mich App at

---

[2] The fact that Davis is a repeat or, as the trial court described, "seasoned" pro se litigant does not change the applicable standards.

732.  For these reasons, the trial court clearly erred in concluding that Davis's claims were devoid of arguable legal merit.

## C.  THE TRIAL COURT CLEARLY ERRED IN FINDING THAT DAVIS INTENDED TO HARASS DEFENDANTS BY FILING HIS COMPLAINT

The trial court also clearly erred when it found that Davis filed his complaint with the intent to harass defendants.  The trial court supported this finding by referencing Davis's allegation that defendants were not his "preferred candidate[s]."  Davis expressed this sentiment in the context of alleging the harm he would suffer if the Wayne County Election Commission included defendants' names on the primary- and general-election ballots.  In other words, to show that he had standing.  The mere lack of support for (or opposition to) a candidate does not render a complaint challenging that person's inclusion on a ballot *per se* frivolous, especially in the context of allegations that appear to have been made for purposes of establishing Davis's standing to sue.  It is paradoxical to require a person to support a candidate, yet still challenge their inclusion on a ballot, to avoid a finding of harassment and frivolousness, and the imposition of sanctions.

The trial court also found that Davis's dismissal of his Court of Claims case without prejudice left defendants "open and vulnerable" to another lawsuit and, thus, supported a finding of harassment.  It further supported this finding by referencing Davis's claims about his dismissal of the Court of Claims case.  These findings are incorrect for at least two reasons.

First, the mere fact that a litigant dismisses a claim of his own accord does not support a finding that he intended to harass a party when he files new claims against them.  See *Leach v Dolese*, 186 Mich 695, 698; 153 NW 47 (1915).  The question in *Leach* was whether the trial court erred in refusing to allow the plaintiff to amend its answer by dismissing that portion of it that "constituted an answer in the nature of a cross-bill." *Id*. at 697.  The *Leach* Court stated:

> An examination of the authorities, English and American, discloses that the right of a complainant to dismiss his bill without prejudice on the payment of costs was of course, except in certain cases, and the exception was where a dismissal of the bill would prejudice the defendants *in some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind*.  [*Id*. at 698 (emphasis added).  See *Pear v Graham*, 258 Mich 161; 241 NW 865 (1932) (stating the same).]

That is, there must be more than the threat of future litigation for the dismissal of a claim without prejudice to support a finding of harassment if the litigant files new claims against a party.  *Leach*, 186 Mich at 698.  This is particularly true, where, as here, the claim relates to election law, where time is of the essence.  His perception regarding the speed of progress in one forum over another may have been misplaced, but it tends to indicate a reason other than harassment.  Further, Davis sued the Secretary of State only in his Court of Claims case; here, he sued defendants and the Wayne County Election Commission.  So, even though his claims in the Court of Claims related to defendants' inclusion on the ballot, as they do here, those claims were directed solely against the Secretary of State.  Thus, although the Court of Claims case may have affected defendants (as the underlying subjects of the litigation), they were not individually sued in the Court of Claims.  Accordingly, the trial court's finding that defendants' dismissal of his Court of Claims case left

defendants "open and vulnerable" to another lawsuit is not an entirely accurate view. The fact that Davis voluntarily dismissed his lawsuit against the Secretary of State without prejudice does not support a finding that he filed this case in circuit court for purposes of harassing defendants.

Second, although MCL 600.2591(3) contains alternative prongs allowing a finding of frivolousness, because Davis's complaint was not devoid of arguable legal merit, that determination supports the conclusion that Davis did not file this case for purposes of harassment. Instead, as discussed earlier, several cases at the time included language and determinations that could lead to a colorable argument that defendants' AOIs did not comply with Michigan election law. This supports a conclusion that Davis filed his complaint for purposes of ensuring compliance with election law. Defendants, the trial court, and others may characterize Davis as a "seasoned" pro se litigant challenging various candidates across the county, but his litigation also serves an important civic function. As illustrated by his successful litigation in other cases, see e.g., *Davis v Highland Park City Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 2, 2022 (Docket No. 361544), and even his prior case that was barred by laches, *Davis v Benson*, unpublished opinion of the Court of Claims, issued September 2, 2022 (Docket Nos. 22-000125-MM, 22-000141-MZ, and 22-000143-MZ), Davis's litigation has exposed a variety of deficiencies in campaign documents of candidates and sitting elected officials. A finding of harassment in this regard—without more than his dismissal of the Court of Claims case[3] and his support for other candidates—could dissuade others from serving in this role as agitator in the future. Accordingly, we are left with a definite and firm conviction that the trial court made a mistake when it concluded that Davis filed his complaint for purposes of harassment. The trial court therefore erred when it found that Davis filed a frivolous complaint.

For the reasons stated in this opinion, we reverse and remand for further proceedings.[4] We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado

---

[3] We acknowledge the seriousness of Davis's claims regarding statements allegedly made to him by staff of this Court. As noted, these claims were squarely rejected by the Chief Clerk of the Court of Claims and Court of Appeals, Jerry Zimmer, and Davis did not provide any evidence supporting his claims. Regardless, those claims related to his voluntary dismissal of his Court of Claims and, as discussed, that dismissal does not support a finding of harassment.

[4] Though our decision makes it unnecessary to address Davis's other arguments on appeal, we note that an award of appellate attorney fees is inappropriate when a sanction award is premised on MCL 600.2591. See *Fette*, 310 Mich App at 552 (holding that it is improper to expand the scope of MCL 600.2591 to include costs incurred on appeal, including attorney fees); *DeWald v Isola (After Remand)*, 188 Mich App 697, 703; 470 NW2d 505 (1991) (stating the same). Other avenues of obtaining such fees are, however, available to litigants faced with vexatious proceedings on appeal. See MCL 600.2445; MCR 7.211(C)(8); MCR 7.216(C).